UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANE DOE, | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:10-CV-02181 |
| HARRIS COUNTY, | § | |
| Defendant. | § | |

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

Plaintiff Jane Doe, an indigent woman with limited English proficiency (LEP), claims that Defendant Harris County refuses to provide her an interpreter for civil hearings on vital issues, including protective orders, child custody, and child support, in violation of her rights under the laws and Constitutions of the United States and Texas.

STATEMENT OF THE CASE

Ms. Doe brings this civil action for declaratory, injunctive, and monetary relief, alleging unlawful deprivation of her constitutional rights under color of law and in violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*; and the Omnibus Crime Control and Safe Streets Act of 1968 ("Safe Streets Act"), U.S.C. § 3789d. Ms. Doe also brings forward a supplemental claim under the Open Courts Provision, Article I, Section 13 of the Texas Constitution.

JURISDICTION AND VENUE

1. This civil action arises under 42 U.S.C. § 1983, Title VI, the Safe Streets Act, and state law. This Court has jurisdiction to provide monetary and injunctive relief pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

2. This Court has jurisdiction to provide declaratory and other relief pursuant to 28 U.S.C. §§ 2201(a) and 2202.

3. Plaintiff Doe invokes the supplemental jurisdiction of the Court pursuant to 28 U.S.C. §1367(a) to consider her state law claim.

4. All events complained of took place within this judicial district and division. Thus, this Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Jane Doe, a woman with LEP, resides in Harris County. Since November 2008, she has had to attend a series of hearings in Harris County Family District Court related to custody and support of her daughter and a protective order.

6. Defendant Harris County may be served through Judge Ed Emmett at 1001 Preston, Suite 911, Houston, Texas 77002 and County Attorney Vince Ryan at 1019 Congress St., Floor 15, Houston, Texas 77002.

## STATEMENT OF FACTS

7. Jane Doe needed to attend a hearing in Harris County Family District Court that would determine whether or not she would retain primary custody of her young daughter.

8. Ms. Doe had recently ended her relationship with her ex-fiancé, the child's father, and moved into a shelter for victims of domestic violence. She feared losing custody of her daughter to an abusive man.

9. Ms. Doe speaks Spanish and is unable to understand most written or spoken English. In order to have her day in court, Defendant required Ms. Doe to pay hundreds of dollars to hire an interpreter so that she could understand and participate in the proceedings.

10. Defendant has a policy, practice, or custom of refusing to provide interpreters to LEP litigants for hearings in civil cases in its courts, except in cases where a Texas statute specifically requires it to do so or an interpreter is requested by Defendant's own attorneys. In most civil cases, Defendant forces litigants to pay for interpreters, even if they are indigent. Defendant forced Ms. Doe to pay hundreds of dollars to attend hearings in Harris County Family District Court in an ongoing process that lasted years and put a significant burden on Ms. Doe that took money she had been using to support her daughter.

11. When she was 33 years old, Ms. Doe moved to Harris County from Mexico. She arrived in May 2006 and gave birth to a daughter, her only child, a few months later. Ms. Doe was an attorney in Mexico, but she gave up that work to move in with a man, who is now her ex-fiancé.

12. Ms. Doe remained in Harris County after her daughter was born, but she and her ex-fiancé had planned to live in Mexico after he tied up some loose ends with the construction business he owned. She had started taking English classes and looked forward to returning to Michoacán, where she enjoyed a busy and fulfilling career.

13. Shortly after their daughter was born, Ms. Doe's ex-fiancé became controlling and violent. He abused her both physically and verbally, which she reported to the police. Fearing for her life and that of her daughter, Ms. Doe left the home she shared with her ex-fiancé and moved into a shelter for victims of domestic violence.

14. Ms. Doe contacted an attorney to help her obtain a protective order against her ex-fiancé. It is essential for victims of domestic violence to pursue legal remedies because "studies have shown that civil court intervention in the lives of victims of domestic violence has been effective in stopping the abuse in a high percentage of cases." Nancy K.D. Lemon, *Access to*

*Justice: Can Domestic Violence Courts Better Address the Needs of Non-English Speaking Victims of Domestic Violence?*, 21 Berkeley J. Gender L. & Just 38, 43 (2006).

15. Ms. Doe learned from her attorney that Harris County's policy was not to provide an interpreter for her in the hearing. As a lawyer, she knew how important it was to be understood and understand what was happening at a hearing, especially where the safety of her daughter and herself could be on the line. Ms. Doe could not afford to hire a private interpreter, so she asked relatives from Mexico to send her money, which they did, although they also were persons of limited means.

16. Access to interpreters is essential for LEP litigants like Ms. Doe because the absence of an interpreter, "frequently results in inaccurate and incomplete communication with the court and misunderstandings about what orders have been made and the specific requirements of those orders." *Id*. at 46.

17. Ms. Doe went to court for the hearing on a protective order against her abuser. The judge reset the hearing for a later date, but Ms. Doe still had to pay for the interpreter she used that day. When Ms. Doe returned to court, the hearing had to be reset again because there was no interpreter available.

18. Ms. Doe paid for an interpreter a second time when the protective order hearing finally occurred. In all, Ms. Doe paid approximately $250 for interpreters to be present at her protective order hearings, which she or her family could scarcely afford.

19. Ms. Doe's ex-fiancé then filed a petition in Defendant's court, requesting that he be appointed one of the joint managing conservators of their daughter. The petition also requested DNA testing. This suit was consolidated with a suit initiated by the Office of the Attorney General to assess child support.

20. After her protective order hearings, Ms. Doe no longer had money to pay for an attorney. A caseworker at the shelter where Ms. Doe was living with her daughter put her in touch with a new attorney. Luckily, he agreed to represent her *pro bono*.

21. The caseworker also called Defendant to request an interpreter for Ms. Doe's upcoming hearings. A Harris County clerk, following Defendant's policy, practice, or custom, told the caseworker that the county would not provide an interpreter.

22. Defendant refused to provide interpreters at Ms. Doe's four subsequent hearings for child custody and support issues, forcing her to hire interpreters so that she could participate in the proceedings. She remains in debt for much of the cost. Ms. Doe has now spent a total of approximately $1250 for interpreters to provide her the most basic participation level in Defendant's courts for vital hearings upon which the custody and safety of her child and herself depend.

23. Defendant's policy, practice, or custom is widespread and well-known among attorneys and advocates who assist victims of domestic violence in Harris County.

24. The Harris County Commissioners Court, the governing body of the county, has actual knowledge of the policy, practice, or custom. Counsel for Plaintiff has personally put Defendant on notice in writing of its policy and asked that it be changed. Ms. Doe brings this suit only after her counsel made efforts to get Defendant to end its policy, but was rebuffed.

25. The Harris County Commissioners Court is the final policymaker regarding Defendant's refusal to provide interpreters to indigent, LEP litigants for hearings in civil cases in its courts. It has the authority to make the county budget, appropriate county funds, and provide necessary personnel for the Harris County Family District Court. *See* Tex. Loc. Gov't Code Ann. §§ 111.031-111.045; Tex. Gov't Code § 24.065. The Commissioners Court determines

whether or not the Family District Court will have the resources to pay for interpreters for indigent litigants. Defendant's judges cannot provide interpreters if the County does not provide these resources.

26. Defendant receives federal funding, including funds made available under 42 U.S.C. Chapter 46.

27. Because she is an attorney, albeit from Mexico, Ms. Doe, unlike many LEP litigants, is aware that she has a right to an interpreter and that Defendant is violating this right. It is very likely that she will have to participate in future hearings in Defendant's courts. Her ex-fiancé has already challenged his court-ordered child support payment and will likely try to change their custody and support agreement again before their now three-year-old daughter turns eighteen. Given his violent proclivities, Ms. Doe may also need to apply for another protective order against the child's father.

28. If Defendant continues to refuse to provide Ms. Doe an interpreter, it is likely she will have to participate in unfair hearings with a high probability of error. Defendant's policy, practice, or custom severely jeopardizes her ability to protect her family's safety and secure child support for her daughter. Defendant also places her in danger of losing custody rights to a dangerous batterer.

29. It is crucial that Ms. Doe keep her whereabouts hidden from her abusive ex-fiancé. She brings this petition under the "Jane Doe" alias out of concern for her safety.

CAUSES OF ACTION

30. Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendant, under color of law, violated her rights under the U.S. Constitution. Defendant's policy, practice, or custom of refusing to provide interpreters to indigent, LEP litigants for hearings in civil cases in its courts,

except in cases where a Texas statute specifically requires it to do so or an interpreter is requested by Defendant's own attorneys, violates her Fourteenth Amendment rights to due process and equal protection. Plaintiff also alleges that Defendant violated her right to be free from discrimination on the basis of her national origin pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*, and the Safe Streets Act, 42 U.S.C. § 3789d. Separate from her claims under 42 U.S.C. § 1983, Title VI, and the Safe Streets Act, Ms. Doe brings forward a supplemental claim under Article I, Section 13 of the Texas Constitution.

### A. PROCEDURAL DUE PROCESS

31. Defendant's aforementioned policy, practice, or custom does not meet sufficient procedural due process requirements under the Fourteenth Amendment.

32. Defendant's policy, practice, or custom jeopardizes Ms. Doe's rights to custody, protection, and care of her child. These are important interests that the Supreme Court has recognized as worthy of deference and protection. *See Stanley v. Illinois*, 405 U.S. 645, 651 (1972).

33. There is a high risk that Defendant's policy, practice, or custom will erroneously deprive Ms. Doe of her rights. The "fundamental requisite of due process is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). Because Ms. Doe has limited English proficiency, an interpreter must be present for her to be heard in any meaningful way.

34. Due to her indigence, Plaintiff is unable to pay the high cost of an interpreter and must take on debt in order to be heard. She has no guarantee that a loan for an interpreter will be available to her for future civil hearings in Harris County courts.

### B. SUBSTANTIVE DUE PROCESS

8

35. Defendant's aforementioned policy, practice, or custom does not meet sufficient substantive due process requirements under the Fourteenth Amendment.

36. In cases involving "the adjustment of a fundamental human relationship," the Supreme Court holds that "the right to a meaningful opportunity to be heard within the limits of practicality must be protected against denial by particular laws that operate to jeopardize it for particular individuals." *Boddie v. Connecticut*, 401 U.S. 371, 379-80 (1971).

37. Defendant's family court is the only forum available to Ms. Doe for retaining custody of her child and child support. Because Defendant has a monopoly over the techniques of final dispute settlement in this instance, and there are no effective alternatives, it cannot deny Ms. Doe access to this exclusive forum by requiring her to pay fees she cannot afford in order to participate. *See id*. at 375-77.

38. Defendant does not advance a "countervailing state interest of overriding significance" to justify its denial of a forum for Plaintiff to present her claims. *See id*. at 377.

### C. EQUAL PROTECTION

39. Plaintiff alleges a cause of action under the Equal Protection Clause of the Fourteenth Amendment, which guarantees equal rights and equal protection under the laws.

40. Defendant's aforementioned policy, practice, or custom restricts Ms. Doe's access to courts, a fundamental right that is "basic to our system of government, and it is well established today that it is one of the fundamental rights protected by the [U.S.] Constitution." *Ryland v. Shapiro*, 708 F.2d 967, 971 (5th Cir. 1983).

41. Defendant's policy, practice, or custom also interferes with Ms. Doe's fundamental right to custody and care of her children. *See Stanley v. Illinois*, 405 U.S. 645, 651 (1972).

42. Defendant does not advance a compelling state interest by the least restrictive means available in order to justify the severe and unequal burden on Plaintiff's constitutional rights.

43. Defendant's policy, practice, or custom imposes an undue financial burden on Ms. Doe, who now must pay to exercise her constitutional rights or lose them.

### D. TITLE VI

44. Plaintiff alleges a cause of action under Title VI of the Civil Rights Act of 1964, which prohibits, *inter alia*, discrimination on the basis of national origin by recipients of federal financial assistance. 42 U.S.C. § 2000d *et seq*.

45. The Fifth Circuit has noted that "[l]anguage may be used as a covert basis for national origin discrimination." *Garcia v. Gloor*, 618 F.2d 264, 268 (5th Cir. 1980). "To a person who speaks only one tongue or to a person who has difficulty using a language other than the one spoken in his home, language might well be an immutable characteristic like skin color, sex or place of birth." *Id*. at 270.

46. Defendant's aforementioned policy, practice, or custom intentionally discriminates against speakers of languages other than English.

### E. TEXAS OPEN COURTS PROVISION

47. Article I, §13 of the Texas Constitution limits the use of court costs where those costs are a deterrent to litigation. State courts must be "open to all with legitimate disputes, not just those who can afford to pay the fees to get in." *Griffin Industries, Inc. v. 13th Court of Appeals*, 934 S.W.2d 349, 353 (Tex. 1996).

48. Defendant's aforementioned policy, practice, or custom violates Ms. Doe's constitutional right to open courts by forcing her to pay fees she cannot afford in order to litigate her claims.

10

F. SAFE STREETS ACT

49. The Safe Streets Act, 42 U.S.C. § 3789d, and its implementing regulations prohibit discrimination, *inter alia*, on the basis of national origin by programs funded in whole or in part from funds made available under 42 U.S.C. Chapter 46.  42 U.S.C. § 3789d(c)(4).  The regulations were adopted by the United States Department of Justice and codified at 28 C.F.R. § 42.203.

50. Defendant receives federal funding that subjects it to the requirements of the Safe Streets Act.

51. Defendant's aforementioned policy, practice, or custom discriminates against speakers of languages other than English, violating their right to be free from discrimination on the basis of their national origin under the Safe Streets Act and its implementing regulations.

DAMAGES

52. Plaintiff seeks actual damages against Defendant for her injuries suffered for having to pay to access justice in Defendant's court.

DECLARATORY AND INJUNCTIVE RELIEF

53. This suit involves an actual controversy within the Court's jurisdiction, and the Court may declare the rights of Plaintiff under the Constitutions and laws of the United States and grant such necessary and proper relief.

54. As a proximate result of Defendant's policy, practice, or custom, Ms. Doe has suffered, and will continue to suffer, irreparable injury in the denial of her civil rights.  There is a high likelihood that she will return to court for hearings involving custody, safety, and support of her child.

11

55. Unless injunctive relief is granted, Ms. Doe will continue to suffer immediate and irreparable injury for which there is no remedy at law, and could lose custody, support, or safety for her child.

## ATTORNEYS' FEES

56. Plaintiff is entitled to recover attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and the Texas Declaratory Judgments Act.

## PRAYER FOR RELIEF

THEREFORE, Ms. Doe respectfully prays that this Court:

A. Enter declaratory judgment, specifying the rights of Plaintiff, and finding Defendant's policy, practice, or custom, as complained of, unlawful under federal and state law;

B. Enjoin further use of Defendant's policy, practice, or custom of refusing to provide interpreters to indigent, LEP litigants for hearings in civil cases in its courts;

C. Award actual damages to Plaintiff against Defendant;

D. Order Defendant to pay Ms. Doe's attorneys' fees and costs; and,

E. Grant all other and additional relief to which Plaintiff may be entitled, at law or in equity.

Dated: August 9, 2011.

Respectfully Submitted:

/s/ Abigail Frank
Abigail Frank
So. Dist No. 1076613
Texas State Bar No. 24069732
Wayne Krause
So. Dist No. 31053
Texas State Bar No. 24032644
James C. Harrington
So. Dist No. 4025
Texas State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Dr.
Austin, TX 78741

(512) 474-5073 (phone)
(512) 474-0726 (fax)

ATTORNEYS FOR PLAINTIFF

NOTICE OF ELECTRONIC FILING

I certify that I have filed a true copy of this document in accordance with the Electronic Case Files System of the Southern District of Texas on August 9, 2011.

/s/ Abigail Frank
Abigail Frank

CERTIFICATE OF SERVICE

I certify that I served a true copy of this document on all counsel of record through the Electronic Case Files System of the Southern District of Texas on August 9, 2011.

/s/ Abigail Frank
Abigail Frank